UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————

CHARLES PELLIS,                                    **DECISION AND ORDER**

           Petitioner,

    v.                                         1:19-CV-00149 EAW

PAROLE OFFICER MICHAEL
WRIGHT; TINA M. STANFORD,
Chairwoman of the New York State Board
of Parole,

          Respondents.

———————————————

## I.    <u>INTRODUCTION</u>

Charles Pellis ("Petitioner") has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the March 19, 2015 judgment of conviction entered against him in New York State Supreme Court, Erie County (Burns, J.). (Dkt. 1). For the reasons set forth below, the petition is denied.

## II.    <u>BACKGROUND</u>

### A. State Court Proceedings

By Erie County Indictment No. 01770-2015, Petitioner was charged with one count of second-degree robbery in violation of P.L. § 160.10(1). The indictment alleged that on September 12, 2013, while being aided by another person actually present,[1] Petitioner forcibly stole money and a cell phone from Samuel Martin ("Martin").

---

[1] The other person was Donald Reardon ("Reardon"), Petitioner's friend and traveling companion. Reardon testified for the prosecution at Petitioner's trial.

At Petitioner's jury trial, Martin testified that on the evening of September 12, 2013, he was at his mother's house in Orchard Park. (T: 225-26).[2] Around 7:00 p.m., he received text messages from a number he did not recognize.[3] (T: 226). The person sending the texts asked if Martin was friends with someone named Zach Anderson and if he was still looking to buy some marijuana. (T: 226-27). Martin replied that he was interested in buying a half-ounce. Martin and the person texting him agreed upon a price of $130 or $140 and planned to meet at a nearby convenience store. (T: 227).

Martin arrived at the store five minutes after the text exchange. About 20 minutes later, two men (Reardon and Petitioner) approached him and asked if he was "Zach's boy." Martin said that he was. (T: 230, 306). After Reardon used the restroom, all three walked along Armor Duells Road and entered a plot of woods to weigh out the marijuana. (T: 233, 307). When Martin glanced away, Reardon hit him on the head and placed him in a chokehold. (T: 233, 308). As Petitioner started going through the pockets of Martin's shorts, Martin lost consciousness. (T: 233, 310). When he came to, he was wearing only his boxer underwear and his shirt. His shorts, cell phone, and the four dollars he had in his shorts' pocket were missing. (T: 234-36).

Martin put on his sneakers, walked to a nearby house, and knocked on the back door. When resident Linda Wrobel ("Wrobel") answered, Martin related what had happened to him, and Wrobel called the police. (T: 236, 364-65). (T: 366). Wrobel

---

[2]     Citations in parentheses to "T" refer to pages of the trial transcript, filed manually by Respondents in connection with their response to the petition.

[3]     The phone number later was identified as belonging to Petitioner. (T: 287).

observed that Martin was upset, missing his shorts, spattered with mud, and had redness on his neck.  (T: 365).

When Orchard Park Police Department Officer Robert Cirbus ("Officer Cirbus") responded to the scene, he observed that Martin was extremely agitated, had swelling around his eyes and red marks on his throat, and was not wearing shorts.  (T: 312-14, 373-74, 377).  Martin provided an oral statement to Officer Cirbus indicating that he had been assaulted by two males near Woodland Drive, that he had been choked and lost consciousness, and that one of the men had torn his shorts off and taken them.  (T: 379).

The following day, while responding to a disturbance at the Kwik Fill Store, Orchard Park Police Department Investigator John Payne ("Investigator Payne") noticed two young men sitting at a picnic table on the property.  (T: 386-87).  He noted that they matched the description of Martin's assailants provided to him by Officer Cirbus.  (T: 387).  In addition, Investigator Payne recognized Petitioner by his street name of "Sketchy Chuck."  (T: 387-88).  After talking with Petitioner and his companion, later identified as Reardon, Investigator Payne learned that they had been staying in a tent they had set up in the woods near the location where Martin was robbed.  (T: 390).  After obtaining a supporting deposition from Martin, Investigator Payne arrested Petitioner and Reardon later that evening.  (T: 391-92).

Reardon testified that in August of 2013, he was "on the run" from drug court following a burglary conviction in Oswego County.  (T: 284-85).  He and Petitioner, whom he had known since 2012 through a mutual acquaintance (T: 281), decided to leave Oswego County.  Their first stop was Orchard Park, with the ultimate goal of heading out West.  (T:

285-86).   When they reached Orchard Park, they did not have much money and were camping outside.  (T: 287).  Reardon did not have a cell phone so they shared Petitioner's phone.  (T: 287, 291).  The only time they were apart was when Petitioner's cell phone was stolen and they split up for four or five minutes to retrieve the phone.  (T: 298).

Reardon testified that Martin, who had gotten their phone number from Zach Anderson, had called them in September about purchasing about a half ounce of marijuana. (T: 302-03).  To obtain money for bus tickets to Texas, Reardon and Petitioner devised a scheme to package up grass clippings and weeds as if they were marijuana, sell it to Martin, and then steal Martin's money.   (T: 303, 305).   Reardon testified that Petitioner communicated with Martin via text about the sale, gathered up the clippings, and packaged them up.  (T: 302-04).

When they met Martin at the convenience store, he told them he wanted to see the marijuana weighed out on a scale.  (T: 306-07).  That was not part of the plan, and Reardon and Petitioner had not discussed what to do next.  All three walked into woods ostensibly to find a place to set down a scale.  (T: 307-08).  Reardon testified that a "plan B" came together when Petitioner gave "[him] a motion to just hit [Martin] and take the stuff."  (T: 309).  Reardon punched Martin on the chin; as Martin started to fall, Reardon grabbed him in a headlock.  (T: 310).  While Martin and Reardon were struggling on the ground, Petitioner tried to go into Martin's pockets and eventually just pulled off his shorts.  (T: 310-11).  At that point, Martin went unconscious.  Petitioner and Reardon fled with Martin's shorts, in which they later found $4.00 and a cell phone.  (T: 311-12).

Reardon testified that he was arrested by Investigator Payne and charged with second-degree robbery later that day. (T: 317). He pleaded guilty to third-degree robbery, a class D felony, which he understood was a "one step reduction." (T: 318). As a condition of the plea, he had to cooperate with the prosecutor's office and testify at Petitioner's trial. (*Id.*). He had not yet been sentenced on the third-degree robbery conviction. (*Id.*). He testified that no one had made him any promises as to his sentence. (T: 318-19).

Petitioner did not testify or call witnesses. The jury returned a verdict convicting him as charged in the indictment. He was sentenced to a determinate term of imprisonment of four and one-half years to be followed by five years of post-release supervision.

Represented by new counsel, Petitioner pursued a direct appeal. The Appellate Division, Fourth Department, of New York State Supreme Court unanimously affirmed the conviction. *People v. Pellis*, 159 A.D.3d 1347, 73 N.Y.S.3d 688 (4th Dept. 2018). The New York Court of Appeals denied leave to appeal. *People v. Pellis*, 31 N.Y.3d 1151 (2018).

### B. Federal Habeas Proceeding

The handwritten petition, timely filed on January 26, 2019, asserts the following grounds for relief: (1) the denial of his motion pursuant to New York Criminal Procedure Law ("C.P.L.") §§ 30.20 and 30.30 violated his right to a speedy trial under the Fifth, Sixth, and Fourteenth Amendments (Dkt. 1 at 5-11, ¶¶ 13-14); (2) the trial court's rulings pursuant to *People v. Sandoval*, 34 N.Y.2d 371 (1974)*,* and *People v. Molineux*, 168 N.Y. 264 (1901), violated the Fifth, Sixth, and Fourteenth Amendments and violated his rights to a public trial by an impartial jury (Dkt. 1 at 11-18, ¶ 16; *id.* at 29); and (3) the prosecution

failed to prove beyond a reasonable doubt both elements of second-degree robbery, in violation of his due process rights under the Fifth and Fourteenth Amendments (Dkt. 1 at 18-28, ¶ 18).  Petitioner also filed a supporting memorandum of law on January 31, 2019. (Dkt. 2).

On July 29, 2019, Respondent responded to the petition (Dkt. 9 (Response); Dkt. 10 (Memorandum in Support)) and manually filed the state court record and transcripts that same day.  Petitioner filed a Reply.  (Dkt. 11).

On November 6, 2019, Petitioner filed a Request to Amend/Delete (Dkt. 13), seeking to delete the following from the petition: "Paragraphs 13 and 14"; "[a]nything concerning 'speedy trial' grounds"; and, "[i]n the 'WHEREFORE' clause Section (1) 'dismissing the indictment for the trial court's failure to provide Due Process of law under C.P.L. § 30.30 and all applicable case law.'"  (*Id.* at 1).  Petitioner states that he is "abandon[ing] these Grounds in their entirety and requests to . . . proceed only with what remains."  (*Id.*).  By text order entered June 18, 2020 (Dkt. 17), the Court granted the Request to Amend/Delete (Dkt. 13) and informed Petitioner that it was unnecessary to file an amended petition.  As amended, the petition now asserts the following grounds for relief:  (1) the trial court erroneously denied the defense motions for a mistrial, thereby denying Petitioner due process, a public trial, and the right to an impartial jury; and (2) the prosecution failed to prove his guilt of the charged offense beyond a reasonable doubt in violation of Petitioner's right to due process.

On February 26, 2021, Petitioner filed a Notice of Change of Address and Request to Amend Respondent, explaining that he had been released to parole supervision.  (Dkt.

20).  The Court granted the request in a text order entered May 12, 2021, amending the caption to name Parole Officer Michael Wright and Tina M. Stanford, Chairwoman of the New York State Board of Parole, as the respondents.  (Dkt. 21).

On March 16, 2022, Petitioner filed a Notice of Change of Address indicating that his new address was Groveland Correctional Facility.  (Dkt. 22).  A search of the New York State Department of Corrections and Community Supervision ("DOCCS") Inmate Lookup website indicates that Petitioner was reincarcerated on January 6, 2022, on a Return from Parole/Conditional Release, and remains in custody.  *See Incarcerated Lookup*, NY DOCCS, https://www.nysdoccslookup.doccs.ny.gov (last visited Aug. 21, 2022).

## III.   <u>JURISDICTION</u>

### A. The "In Custody" Requirement

"The federal habeas statute authorizes United States district courts to entertain petitions for habeas relief from state-court judgments only when the petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'"  *Garlotte v. Fordice*, 515 U.S. 39, 43-44 (1995) (quoting 28 U.S.C. § 2254(a); citing 28 U.S.C. § 2241(c)(3)).  This statutory language "requir[es] that the habeas petitioner be 'in custody' under the conviction or sentence under attack at the time his petition is filed."  *Maleng v. Cook*, 490 U.S. 488, 490-91 (1989) (citing *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968)).  However, "[i]t is well settled that jurisdiction is not defeated even if petitioner is later paroled, deported or otherwise released."  *Butti v. Fischer*, 385 F. Supp. 2d 183, 185 (W.D.N.Y. 2005) (citations omitted); *see also Spencer v. Kemna*, 523 U.S. 1, 7 (1998)

("The District Court's conclusion that Spencer's release from prison caused his petition to be moot because it no longer satisfied the 'in custody' requirement of the habeas statute was in error.  Spencer was incarcerated by reason of the parole revocation at the time the petition was filed, which is all the 'in custody' provision of 28 U.S.C. § 2254 requires.").

Here, Petitioner filed his federal habeas petition on January 26, 2019, while he was incarcerated at Elmira Correctional Facility and serving the sentence imposed on the second-degree robbery conviction he attacks in the petition.  (Dkt. 1 at 30).  Accordingly, Petitioner has fulfilled the habeas statute's "in custody" requirement.

### B.  Mootness and Justiciability

Article III, Section 2 of the United States Constitution limits the subject matter of the federal courts to cases that present a "case or controversy."  *Spencer*, 523 U.S. at 7. "Thus, where the issues presented by a party in an action are no longer 'live,' or the party lacks a legally cognizable interest in the outcome, the federal action is properly dismissed as moot." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000).  "[T]o satisfy the case-or-controversy requirement, a party must, at all stages of the litigation, have an actual injury, which is likely to be redressed by a favorable judicial decision." *United States v. Mercurris*, 192 F.3d 290, 293 (2d Cir. 1999) (citation omitted).  "Unlike the 'in custody' requirement, mootness is not fixed at the time of filing but must be considered at every stage of the habeas proceeding." *Nowakowski v. New York*, 835 F.3d 210, 217-18 (2d Cir. 2016) (citing *Carafas*, 391 U.S. at 237).

"A criminal case does not necessarily become moot when the convict finishes serving the sentence.  Instead, the case will remain a live case or controversy if there exists

'some concrete and continuing injury' or 'collateral consequence' resulting from the conviction." *Mercurris*, 192 F.3d at 293 (quoting *Spencer*, 523 U.S. at 7).  Where the defendant challenges the criminal conviction itself, the Supreme Court "has been willing to *presume* the existence of collateral consequences sufficient to satisfy the case-or-controversy requirement; or in a practice that it views as 'effectively the same,' the Court has been willing 'to count collateral consequences that are remote and unlikely to occur.'" *United States v. Probber*, 170 F.3d 345, 348 (2d Cir. 1999) (quoting *Spencer*, 523 U.S. at 8; emphasis in *Probber*).

The Supreme Court first articulated this presumption of collateral consequences in *Sibron v. New York*, 392 U.S. 40 (1968), noting that it is an "obvious fact of life that most criminal convictions do in fact entail adverse collateral legal consequences." *Id.* at 55. "After *Sibron*, a habeas petition challenging a criminal conviction is rendered moot by a release from imprisonment 'only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction.'" *Perez v. Greiner*, 296 F.3d 123, 125 (2d Cir. 2002) (quoting *Sibron*, 392 U.S. at 57).

During the pendency of the petition, Petitioner completed his sentence for the robbery conviction and was released from incarceration to parole supervision.  However, he apparently did not comply with his parole conditions and, on January 6, 2022, was returned to Respondent's custody on a parole violation.[4]  Although Petitioner is no longer

---

[4]     Petitioner is currently incarcerated at Groveland Correctional Facility.  (Dkt. 22). In light of his *pro se* status and the absence of prejudice to Respondent, the Court, in the interest of judicial efficiency, will deem the petition amended to change the name of Respondent to reflect the state official who presently has custody of Petitioner. *See Smith*

serving the sentence originally imposed for his robbery conviction, the petition is not moot because it challenges the constitutionality of that felony conviction. *See Anderson v. Smith*, 751 F.2d 96, 100 (2d Cir. 1984) ("Clearly, Anderson's [habeas] challenges [to his attempted robbery conviction] are not moot, since a felony conviction carries certain 'collateral consequences.'. . . For example, a convicted felon cannot obtain a license from some businesses, . . . or serve jury duty[.]") (quotation and internal citations omitted); *Burch v. Millas*, 663 F. Supp. 2d 151, 157 (W.D.N.Y. 2009) ("Burch challenges the underlying felony conviction that led to his detention, and the *Sibron* presumption of collateral consequences exists. . . . Accordingly, Burch's habeas petition has not been mooted by his release from incarceration in state custody and presents a justiciable controversy amenable to review by this Court.") (internal citations omitted).

## IV.   **STANDARD OF REVIEW**

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, 97 (2011) ("*Richter*"). AEDPA "revised the conditions under which federal courts may grant

---

*v. Superintendent, Cayuga Corr. Fac.*, No. 918CV0160BKSDJS, 2020 WL 8474766, at *10 (N.D.N.Y. Sept. 17, 2020) (where habeas petitioner was transferred to new correctional facility, district court *sua sponte* amended caption to name warden of that correctional facility as respondent) (citing *Torres v. Superintendent of Upstate Corr. Fac.*, No. 01 CV 1337, 2007 WL 603402, at *5 (N.D.N.Y. Feb. 23, 2007) ("The correct respondent in a habeas corpus petition is the superintendent of the facility where the petitioner is being held. 28 U.S.C. § 2243.")), *report and recommendation adopted*, No. 918CV0160BKSDJS, 2021 WL 193957 (N.D.N.Y. Jan. 20, 2021). The Clerk of Court will be directed to amend the caption to terminate the currently named respondents and to add "Shawn Cronin, Superintendent, Groveland Correctional Facility," as the respondent.

habeas relief to a person in state custody." *Kruelski v. Connecticut Superior Ct. for Jud. Dist. of Danbury*, 316 F.3d 103, 106 (2d Cir. 2003).  Now, under § 2254(d), a federal court "shall not . . . grant[ ]" an application for a writ of habeas corpus "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  In addition, a state court's factual findings are entitled to a presumption of correctness which only may be rebutted by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by th[e] [Supreme] Court on a question of law or if the state court decides a case differently than th[e] [Supreme] Court has on a set of materially indistinguishable facts.  Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] [Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Section 2254(d)'s standard for reviewing claims adjudicated on the merits by state courts is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt." *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (*per curiam*).  "[E]ven

a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 562 U.S. at 102.

"AEDPA 'sets forth a precondition to the grant of habeas relief . . . , not an entitlement to it,'" *Cardoza v. Rock*, 731 F.3d 169, 178 (2d Cir. 2013) (quoting *Fry v. Pliler*, 551 U.S. 112, 119 (2007)), "so even if the standard set forth in section [2254(d)(1) or] 2254(d)(2) is met, the petitioner still 'bears the ultimate burden of proving by a preponderance of the evidence that his constitutional rights have been violated,'" *id.* (quoting *Epps v. Poole*, 687 F.3d 46, 50 (2d Cir. 2012)).

## V.      ANALYSIS OF THE PETITION

### A. Violation of Due Process, the Right to a Public Trial, and the Right to an Impartial Jury Based on the Trial Court's Denial of Petitioner's Motions for a Mistrial

#### 1.   Relevant Background

On March 16, 2015, the trial court heard argument from the parties regarding the prosecutor's request, pursuant to *Sandoval* and *Molineux*,[5] to elicit testimony that Reardon and Petitioner shoplifted to feed themselves while they were camping around Orchard Park, that Petitioner and Reardon had employed the same ruse they used on Martin to rob another

---

[5]      *Sandoval* "sets forth a rule delineating the boundaries of admissible evidence of defendant's prior criminal acts during cross examination, if he chooses to testify, due to the risk of undue prejudice to defendant as a result of immaterial or unnecessary reference to his previous misconduct." *Sierra v. Burge*, No. 06 CIV. 14432 (DC), 2007 WL 4218926, at *2 n.2 (S.D.N.Y. Nov. 30, 2007). *Molineux* provides "evidence of prior crimes or bad acts is admissible to prove a specific crime if it tends to establish motive, intent, absence of mistake or accident, a common scheme or plan between the commission of two or more crimes, or the identity of the person charged with the commission of the crime." *Id.* at *2 n.4.

young man in Orchard Park, and that Petitioner had an outstanding criminal charge of shoplifting from a store in Orchard Park.  (T: 6-7).  Defense counsel opposed the requests as irrelevant and unduly prejudicial.  (T: 7-8).  The trial court ruled that the prosecutor could ask Reardon "if he had any funds to sustain himself" but that the prosecutor could not elicit testimony about any of the other matters because the "prejudice outweighs the probative value."  (T: 9).

During Reardon's direct examination, the prosecutor asked him if he knew Petitioner and how he knew him.  (T: 280).  Reardon replied, "I met him in Oswego, New York through an acquaintance while he was on parole."  (*Id.*).  Defense counsel objected and requested a mistrial.  (*Id.*).  Outside the presence of the jury, defense counsel explained that this answer was non-responsive and that it prejudiced Petitioner because it demonstrated he had been convicted of a felony.  Defense counsel argued that no curative instruction would be sufficient to mitigate the prejudice.  (T: 280-81).  The prosecutor agreed that Reardon's answer was non-responsive and indicated that he had "prepare[d] with [Reardon]" and informed him that they would "not be discussing criminal records or shoplifting."  (T: 281).  However, the prosecutor argued that the error could be addressed with a curative instruction.  (*Id.*).

After a recess to conduct its own research on the issue, the trial court denied the mistrial as a matter of discretion.  The trial court stated it would issue a curative instruction immediately and strike the offending response from the record.  (T: 282).  Defense counsel noted his exception.  (T: 282-83).  The trial court then instructed the jury as follows:  "I am instructing you that anything that may have occurred prior to this case has absolutely no

bearing on this matter.  And you are directed to entirely disregard that portion of the witness' answer."  (T: 283-84).

Later during Reardon's direct examination, the prosecutor asked, "What would you do for meals?"  (T: 294).  Reardon replied, "Go into gas stations and stores and take food if I couldn't afford it."  (*Id.*).  Defense counsel did not immediately object but renewed his request for a mistrial during a break.  (T: 326).  The prosecutor pointed out that Reardon "didn't implicate the defendant.  He stated he would go in and he would take items."  (*Id.*).  The trial court agreed with that characterization of Reardon's testimony and denied the mistrial request.  (T: 327).  Defense counsel did not request a curative instruction and none was given.

During the testimony of Investigator Payne, the prosecutor asked if he detained Petitioner and Reardon based on the information he had received from Officer Cirbus about the Martin matter.  Investigator Payne responded, "I did.  Not specifically on that information immediately.  But there was a separate report for petit larceny. . . ."  (T: 390).  Shortly thereafter, the prosecutor asked if he arrested Petitioner on the robbery charge in connection with the Martin matter.  Investigator Payne replied, "Yes.  Among other charges."  (T: 391).

At the conclusion of Investigator Payne's direct testimony, defense counsel renewed his request for a mistrial based on the reference to the petit larceny charge, which been precluded under the trial court's *Sandoval/Molineux* ruling.  (T: 392-93).  Defense counsel did not seek a curative instruction.  The trial court summarily denied the mistrial request.

(T: 393).  Also, during the final charge, the trial court reiterated that the jury was not allowed to consider any testimony that was stricken from the record.  (T: 436, 445).

On direct appeal, the Appellate Division held that the trial court "did not abuse its discretion in denying his three motions for a mistrial."  *Pellis*, 159 A.D.3d at 1348 (quotation and quotation marks omitted).  The Appellate Division explained that "[t]he decision whether to declare a mistrial necessarily rests in the broad discretion of the trial court, which is best situated to consider all the circumstances, and its determination is entitled to great weight on appeal." *Id.*

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  *Richter*, 562 U.S. at 99 (citation omitted).  The Court finds that the Appellate Division adjudicated the mistrial claim on the merits as contemplated by 28 U.S.C. § 2254(d).  Therefore, AEDPA's limitations on relief apply.

## 2.  The Rejection of the Due Process Claim Was Neither Contrary To, Nor an Unreasonable Application Of, Clearly Established Supreme Court Precedent

"The introduction of unfairly prejudicial evidence against a defendant in a criminal trial is contrary to both state law, . . .and federal law[,] . . . [b]ut not all erroneous admissions of such evidence are errors of constitutional dimension."  *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998) (internal and other citations omitted), *abrogated on other grounds by Perry v. New Hampshire*, 565 U.S. 228 (2012).  "The introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence 'is

so extremely unfair that its admission violates fundamental conceptions of justice.'" *Id.* (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)).

Moreover, "[i]t is axiomatic that federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension." *Wainwright v. Goode*, 464 U.S. 78, 83 (1983) (*per curiam*). "The Supreme Court long has recognized that the conduct of the trial is regulated under the sound discretion of the trial judge, . . . and the trial court is in the best situation to intelligently determine if a mistrial is necessary." *Glenn v. Wynder*, No. CIV.A. 06-513, 2012 WL 4107827, at *15 (W.D. Pa. Sept. 19, 2012) (citing *Herring v. New York*, 422 U.S. 853, 862 (1975); *Gori v. United States*, 367 U.S. 364, 368 (1961)); *see also Robinson v. Artus*, 664 F. Supp. 2d 247, 265 (W.D.N.Y. 2009) ("[B]oth state and federal law are clear that the decision regarding whether to declare a mistrial lies within the sound discretion of the trial court.") (citing *Arizona v. Washington*, 434 U.S. 497, 510-11 (1978) (according "highest degree of respect" to judge's mistrial ruling, even though "some trial judges might have proceeded with the trial after giving the jury appropriate cautionary instructions"); other citation omitted).

Clearly established Supreme Court precedent likewise recognizes a trial court's ability to mitigate potential prejudice by issuing appropriate curative instructions. For example, in *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974), the Supreme Court denied the petitioner's claim for habeas relief based on prosecutorial misconduct, finding that, although the prosecutor's statement was improper, it was not so prejudicial that its effect could not be mitigated by a curative instruction. The Supreme Court found it significant that the trial judge in *Donnelly* had issued a "strong" instruction, stating twice

that the prosecutor's arguments were not evidence and directing the jury to disregard the offensive statement in particular.  Accordingly, the Supreme Court concluded, any prejudice caused by the remark had been cured and there was no denial of due process. *Id.* at 641-45 (prosecutor's remark to jury, in reference to defendant and his counsel, "They said that they hope that you find him not guilty. I quite frankly think that they hope that you find him guilty of something a little less than first-degree murder," was ambiguous and not so clearly prejudicial as to be unmitigated in its effect by curative instruction, and, in view of curative instruction, there was no denial of due process).

Supreme Court precedent also provides that a jury is "normally presume[d] . . . [to] follow an instruction to disregard inadmissible evidence inadvertently presented to it." *Greer v. Miller*, 483 U.S. 756, 767 n.8 (1987) (citing *Richardson v. Marsh*, 481 U.S. 200, 208 (1987)).  That presumption may be disregarded if two factors are present—"an 'overwhelming probability' that the jury will be unable to follow the court's instructions," *id.* (citing *Richardson*, 481 U.S. at 208), "and a strong likelihood that the effect of the evidence would be 'devastating' to the defendant," *id.* (quoting *Bruton v. United States*, 391 U.S. 123, 136 (1968)).

As to the first instance of testimony that was outside the bounds of the *Sandoval/Molineux* ruling, the trial court struck it from the record and issued a prompt curative instruction.  It was not unreasonable for the trial court to determine that such measures were a sufficient remedy for the problematic testimony.  There is no suggestion that the jury was unable to abide by the trial court's instructions, and the testimony reasonably cannot be described as "devastating" to the defense case.  With regard to

Reardon's testimony about shoplifting and Investigator Payne's gratuitous reference to Petitioner's petit larceny charge, defense counsel did not object until after the witnesses completed their direct examination, which suggests that he did not believe either infraction was particularly serious.  Nor did defense counsel request any type of curative instruction in either instance.  It was not unreasonable for the trial court to determine that these two instances of testimony did not warrant declaring a mistrial, and Petitioner did not request any other judicial intervention, such as a limiting instruction.

Petitioner has not shown that the Appellate Division, in rejecting his mistrial claim, arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or a conclusion different from that reached by the Supreme Court in a case with materially indistinguishable facts.  Nor has he shown that the Appellate Division identified the correct governing legal principle but unreasonably applied it to the facts of his case.  To the contrary, the Appellate Division's finding that the trial court deliberately exercised its discretion in denying defense counsel's requests for a mistrial reflects a reasonable application of the Supreme Court's precedents.  Furthermore, on this record, Petitioner has not demonstrated that his right to a fundamentally fair trial was abridged.  Therefore, habeas relief is unwarranted on this ground.

### 3.   The Allegation Regarding the Denial of a Public Trial by an Impartial Jury Does Not State a Claim for Habeas Relief

Petitioner asserts in passing that the trial court's denial of his requests for a mistrial abridged his right to a "public trial by an impartial jury."  (Dkt. 1 at 29).  "It is well-settled in this Circuit that vague and conclusory allegations that are unsupported by specific factual

averments are insufficient to state a viable claim for habeas relief." *Shamsuddin v. Smith*, No. 9:20-CV-0955 (DNH), 2022 WL 23992, at *11 (N.D.N.Y. Jan. 4, 2022) (citing *Skeete v. New York*, No. 1:03-CV-2903, 2003 WL 22709079, at *2 (E.D.N.Y. Nov. 17, 2003) ("[V]ague, conclusory and unsupported claims do not advance a viable claim for habeas corpus relief.")); *see also Anderson v. Griffen*, No. 11-CV-6633 MAT, 2012 WL 5227297, at *4 (W.D.N.Y. Oct. 22, 2012) ("'[B]ald assertions and conclusory allegations' . . . do not provide a court with sufficient information to permit a proper assessment of habeas claims.") (quoting *Mayberry v. Petsock*, 821 F.2d 179, 185 (3d Cir. 1987)).

Petitioner has not provided any additional facts or any legal argument as to how the denial of his mistrial requests impinged upon the public nature of his trial or detracted from the juror's impartiality. The Court finds that the allegation regarding the denial a public trial by an impartial jury is simply too vague and conclusory to state a colorable claim on which habeas relief may be granted. *See*, *e.g.*, *Baptiste v. Ercole*, 766 F. Supp. 2d 339, 363-64 (N.D.N.Y. 2011) ("Petitioner has not identified any witness counsel failed to call, nor has he set forth any facts or arguments in support of this assertion. Petitioner's vague and conclusory statement that counsel failed to call exculpatory witnesses is therefore denied.") (citations omitted). Therefore, this ground does not provide a basis for habeas relief.

## B.   Failure to Prove Petitioner's Guilt Beyond a Reasonable Doubt

In the petition, Petitioner repeats the arguments made in support of the weight of the evidence claim raised on appeal (*see* Dkt. 1 at 18-29), including that the prosecution's witnesses were not credible and provided inconsistent testimony. However, for the first

time, he cites due process and the Fifth and Fourteenth Amendments.  (*Id.* at 18).

"Although [Petitioner] cites provisions of the federal constitution in his habeas pleadings

to support his weight-of-the-evidence argument, that does not transform the claim into a

federal constitutional claim cognizable on federal habeas review."  *Minigan v. Donnelly*,

No. 01-CV-0026A VEB, 2007 WL 542137, at *12-13 (W.D.N.Y. Feb. 16, 2007), *report

and recommendation adopted*, No. 01-CV-026, 2007 WL 981762 (W.D.N.Y. Mar. 30,

2007); *see also Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2d Cir. 2002) ("[N]ot 'every error

of state law can be transmogrified by artful argumentation into a constitutional violation.'")

(quoting *Sanna v. Dipaolo*, 265 F.3d 1, 12 (1st Cir. 2001)).

"A challenge to a verdict based on the weight of the evidence is different from a

challenge based on the sufficiency of the evidence; both state and federal courts in New

York have recognized that an argument based on the 'weight of the evidence' is purely a

state law claim grounded in [C.P.L.] § 470.15(5), whereas a legal sufficiency claim is based

on federal due process principles."  *Minigan*, 2007 WL 542137, at *13 (citing *People v.

Bleakley*, 69 N.Y.2d 490, 495 (1987)); *see also Garrett v. Perlman*, 438 F. Supp. 2d 467,

470 (S.D.N.Y. 2006) ("'A "weight of the evidence" argument is a pure state law claim

grounded in New York Criminal Procedure Law § 470.15(5)' which empowers New York

State intermediate appellate court to make weight of the evidence determinations.")

(quoting *Correa v. Duncan*, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001)).  It is well settled,

however, that "federal habeas corpus relief does not lie for errors of state law[.]"  *Lewis v.

Jeffers*, 497 U.S. 764, 780 (1990).  Accordingly, courts in this Circuit consistently have

dismissed, as not cognizable in a habeas proceeding, claims asserting that the verdict was

against the weight of the evidence.  *See Garrett*, 438 F. Supp. 2d at 470; *Minigan*, 2007 WL 542137, at *13 (citing *Ex parte Craig*, 282 F. 138, 148 (2d Cir. 1922), *aff'd*, 263 U.S. 255 (1923)).  Because Petitioner's challenge to the weight of the evidence supporting his conviction presents nothing more than an issue of state statutory law, it must be dismissed as not cognizable on federal habeas review.

Even if the Court were to construe the petition liberally as raising a claim that the evidence was legally insufficient as a matter of due process, *e.g.*, *Walton v. Ricks*, No. 01 CIV. 5265 (LMM), 2003 WL 1873607, at *8 (S.D.N.Y. Jan. 31, 2003) (citations omitted), the claim still does not warrant relief.

As an initial matter, any legal insufficiency claim is unexhausted.  For purposes of 28 U.S.C. § 2254(b), "[a] claim is properly exhausted when the state court is fairly apprised of the claim's federal nature and of the factual and legal premises underlying the claim." *Grey v. Hoke*, 933 F.2d 117, 119-20 (2d Cir. 1991).  On direct appeal, Petitioner urged the Appellate Division to find that the jury failed to give the evidence the weight it should be accorded.  (*See* Petitioner's Appellate Brief at 12-15, Respondent's Exhibit B).  He requested that it invoke its authority to reverse or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence."  N.Y. Crim. Proc. Law § 470.15(5).  In his appellate brief, Petitioner cited only state law and did not reference federal law or any constitutional provisions or amendments—state or federal.  Petitioner did not suggest in any way that the evidence was legally insufficient as a matter of law.

The Appellate Division held that, "viewing the evidence in light of the elements of the crime as charged to the jury, we conclude that the verdict is not against the weight of the evidence[.]" *Pellis*, 159 A.D.3d at 1348 (internal and other citation omitted).  The Appellate Division thus did not construe Petitioner's arguments as raising anything other than a request for a reweighing of the evidence under C.P.L. § 470.15(5).

This Court concludes that Petitioner has not exhausted an insufficiency of the evidence claim based on the factual allegations and legal arguments he raised before the state courts.  *See*, *e.g.*, *Williams v. Marshall*, No. 09 CIV. 7411 RJH MHD, 2011 WL 2175810, at *9 (S.D.N.Y. Mar. 30, 2011) ("[P]etitioner has not satisfied the exhaustion requirement of section 2254(b) because he never presented an evidentiary-insufficiency argument to the Appellate Division.  His arguments were directed exclusively to the weight-of-the-evidence standards under New York Law, citing only state cases addressing that test.  In that briefing he offered no indication that he was suggesting that his constitutional right not to be convicted except upon proof of guilt beyond a reasonable doubt was violated.  This mode of argument did not 'fairly present' the constitutional claim to the state courts.") (citations omitted), *report and recommendation adopted*, No. 09 CIV. 7411 RJH MHD, 2011 WL 2175806 (S.D.N.Y. June 2, 2011); *Pham v. Kirkpatrick*, 209 F. Supp. 3d 497, 512-13 (N.D.N.Y. 2016) ("[C]ases which have examined the nature of the weight of the evidence and sufficiency claims have concluded that 'a weight claim cannot stand in for a constitutional sufficiency claim when considering whether a habeas petitioner has exhausted state court remedies because the two claims are no more than somewhat

similar.'") (quoting *Lopez v. Sup't Five Points Corr. Fac.*, No. 1:14-CV-4615, 2015 WL 1300030, at *12 (S.D.N.Y. Mar. 23, 2015) (citations omitted).

At this stage, Petitioner has no avenues in state court by which to exhaust the legal insufficiency claim.  First, he has already utilized the one direct appeal of a conviction to which he is entitled.  *Colon v. Connell*, No. 07 Civ. 7169(BSJ)(JCF), 2009 WL 2002036, at *6 n.4 (S.D.N.Y. July 9, 2009) (citing N.Y. R. CT. § 500.20(d) and N.Y. Crim. Proc. Law § 460.10(5) (providing for a 30-day window for any such application to be filed); N.Y. R. CT. § 500.20(a)(2) (leave letter must indicate that "that no application for the same relief has been addressed to a justice of the Appellate Division, as only one application is available")).  Second, he cannot raise the legal insufficiency claim in a collateral motion to vacate under C.P.L. § 440.10 because the claim was apparent on the trial record and could have been raised on direct appeal.  Therefore, the state court would be required to deny it pursuant to N.Y. Crim. Proc. Law § 440.10(2)(c).  *See Sweet v. Bennett*, 353 F.3d 135, 139 (2d Cir. 2003) ("New York law requires a state court to deny a motion to vacate a judgment based on a constitutional violation where the defendant unjustifiably failed to argue the constitutional violation on direct appeal despite a sufficient record.") (citations omitted).

"In a case such as this, where the petitioner had an opportunity to raise a claim but did not, and is now without a state forum for the claim, the claim is 'deemed exhausted' but procedurally barred from federal habeas review."  *Lee v. Ricks*, 388 F. Supp. 2d 141, 150 (W.D.N.Y. 2005) (citing *Harris v. Reed*, 489 U.S. 255, 263 (1989); *Grey v. Hoke*, 933 F.2d 117, 121 (2d Cir. 1991)).  "[F]ederal courts may address the merits of a [procedurally defaulted] claim . . . only upon a showing of cause for the default and prejudice to the

petitioner," *Bossett v. Walker*, 41 F.3d 825,  829 (2d Cir. 1994), or that the "failure to consider the federal claim will result in a fundamental miscarriage of justice," *Harris*, 489 U.S. at 262.

"Cause" for a procedural default may exist where a petitioner can show that "the factual or legal basis for a claim was not reasonably available to counsel, . . . some interference by officials made compliance impracticable, . . . [or] the procedural default is the result of ineffective assistance of counsel." *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (internal quotation marks and citations omitted).  Petitioner cannot show that the factual or legal basis for the legal insufficiency claim was not reasonably available at the time of his appeal.  Nor is there any evidence suggesting that his failure to raise the claim on direct appeal resulted from either interference by state officials or ineffective assistance of appellate counsel.

Petitioner also cannot show prejudice because he has not stated a colorable due process claim based on the legal insufficiency of the evidence.  Instead, he repeats his contentions on direct appeal raised in support of his weight of the evidence claim.  For instance, he pointed out that none of the stolen property was recovered; characterized Reardon as an interested witness highly motivated to lie in order to obtain a better outcome in his criminal case; and questioned the reliability of Martin's recollection about the incident, given that he passed out during the middle of it and later had difficulty distinguishing between Reardon and Petitioner.  (*See* Petitioner's Appellate Brief at 14-16, Respondent's Exhibit B).

These arguments simply attack the credibility and reliability of the prosecution's witnesses and other proof, and the proper inferences to be drawn from, and weight to be accorded to, that evidence.  Defense counsel already made such arguments to the jury, which rejected them.  "Neither on direct appeal nor on federal habeas is a court reviewing a sufficiency of the evidence claim permitted to revisit the factfinder's determinations as to the witnesses' credibility and veracity." *Moye v. Corcoran*, 668 F. Supp. 2d 523, 539 (W.D.N.Y. 2009) (citing *Gruttola v. Hammock*, 639 F.2d 922, 928 (2d Cir. 1981) (rejecting insufficient evidence claim raised by habeas petitioner because jury was entitled to believe prosecution's witnesses despite inconsistencies in their testimony and the prosecution's evidence); other citation omitted).  The Supreme Court's precedent on legal insufficiency "makes clear" that "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (*per curiam*).  Therefore, Petitioner has not shown that he will be prejudiced by this Court's refusal to hear his procedurally defaulted claim.

Finally, Petitioner cannot fulfill the "fundamental miscarriage of justice" exception. To make the requisite showing of actual innocence, a petitioner must produce "new reliable evidence . . . that was not presented at trial," *Schlup v. Delo*, 513 U.S. 298, 324 (1995), and "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."  *Id.*  Petitioner has not explicitly raised a claim of actual innocence, but the Court has examined the petition's allegations to see if he has come forward with any "new reliable evidence" that could show "factual" innocence. Petitioner has not done so.  Further, as discussed above, Petitioner's allegations attacking

the quantum of proof against him do not rise to the level of a colorable legal insufficiency claim.  Importantly, the Supreme Court has clarified that "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623-24 (1998).

Since Petitioner cannot show cause and prejudice, or a fundamental miscarriage of justice, any legal insufficiency of the evidence claim suggested by the petition is subject to an unexcused procedural default.  It will be dismissed on that basis.

## VI.   <u>CONCLUSION</u>

For the reasons discussed above, the petition (Dkt. 1) is denied.  The Court declines to issue a certificate of appealability because Petitioner has failed to make a substantial showing of the denial of a constitutional right.  *See* 28 U.S.C. § 2253(c).  The Clerk of Court is directed to terminate the currently named respondents and to amend the caption to add "Shawn Cronin, Superintendent, Groveland Correctional Facility," as the respondent; enter judgment in favor of respondent; and close the case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:        August 22, 2022
              Rochester, New York